CLIFTON L. BREMER, trustee, *vs.* EUGENE J. HADLEY
& another, trustees.

Suffolk.   May 15, 1907. — July 11, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Trust. Probate Court. Equity Jurisdiction,* To set aside unauthorized convey-
ance by trustee, *Bona fide* purchaser for value.

A will, which provides for a trust but, in relation to the powers of the trustee,
states only that he is to " stand possessed " of the trust fund and to " pay over
the income and produce " to the beneficiaries, neither in express terms nor by
implication gives to the trustee power to change investments without first pro-
curing leave from the Probate Court.

A trustee under a will which gave him no power to sell any part of the trust
property or to change investments, having procured from the Probate Court an
order giving him leave to sell a part of the trust property for reinvestment, sold
such property and invested the proceeds in a mortgage which was assigned to
him as trustee.  Thereafter, without procuring from the court any further leave,
he as trustee sold the mortgage and misappropriated the proceeds.  In a suit in
equity by his successor as trustee against the person to whom he transferred
the mortgage, seeking a retransfer, it was *held,* that the order of the Probate
Court did not give to the trustee leave to sell for reinvestment more than once,
that the sale to the defendant was unauthorized, and that the bill might be
maintained irrespective of whether the defendant purchased in good faith.

BILL IN EQUITY, filed in the Supreme Judicial Court for the
county of Suffolk, September 22, 1905, by a trustee under the
will of Francis W. Sayles to set aside a transfer of mortgages
by the plaintiff's predecessor as trustee to the estate represented
by the defendants, as trustees, which transfer the plaintiff
alleged to have been made without authority.

There was a hearing before *Braley,* J., who reserved the case
upon the pleadings and agreed facts for consideration and deter-
mination by this court.

It appeared that the plaintiff's predecessor as trustee was one
Charles F. Berry, who was also one of two trustees under the
will of one Pickett.  Having purchased the mortgages in ques-
tion as trustee under the authority of the Probate Court as
stated in the opinion, Berry as trustee under the Sayles will
sold them for cash to himself and his co-trustee under the will

of Pickett and misappropriated the proceeds.    Other facts are
stated in the opinion.

The case was submitted on briefs.

*F. W. Hackett, C. Hackett & C. L. Bremer*, for the plaintiff.

*E. J. Hadley*, for the defendants.

HAMMOND, J.    One of the questions is whether Berry as
trustee under the will of Francis W. Sayles had power to sell
and assign these mortgages.    The decision of this question rests
of course upon the terms of the will as modified by any action
of the Probate Court.    The will after making several bequests
provided that the residue of the estate should go to certain persons
" to the uses, and upon and for the trusts, intents, and pur-
poses, and with and subject to the powers and provisions herein-
after mentioned and expressed of or concerning the same ; — That
is to say, — Upon trust that they the said trustees do and shall
stand and be possessed of one third part of said rest and residue
in trust for the use and benefit of my wife, the said Jane, and
that they do and shall pay all the net income and produce of
the same to the said Jane, or otherwise authorize and empower
her to receive and take the said income and produce for her own
use during her life ; the said principal sum to go at her decease
to such person or persons at such time or times and for such
estates therein as the said Jane shall, by her last will and testa-
ment, . . . direct and appoint; and on default of such direc-
tion, the said principal sum to go to the legal heirs of the said
Jane."    The provisions as to the remaining two thirds of the
trust fund, so far as material to the subject of the present in-
quiry, are substantially the same.

It will be noticed that there is no power expressly given to
the trustees to sell any part of the trust property real or per-
sonal, or to change investments.    The trustees are empowered
simply to " stand possessed " of the trust fund as left by the
testator, and to " pay over the income and produce " to the bene-
ficiaries until the time shall come for the termination of the
trust and the distribution of the principal of the trust fund.
This is not an express power to change investments during the
life of the beneficiaries for life.

And we are of opinion that there is no implied power to sell
any of the trust property until the time comes for the termina-

tion of the trust. This is not a case where a part of the trust fund consists of perishable personal property, nor where, as in the case of an executor or administrator, the duty may be to reduce the assets to cash for the payment of debts and legacies or for distribution among the heirs ; nor where the trustee is instructed to keep the property safely invested. On the contrary, as stated above, the trustee is to stand possessed and to pay over the income. This he can do without changing investments. In view of the singularly bare language of the will upon this point, we think that the question of changing investments is not left to the trustees, but to the Probate Court.

It is contended however by the defendants that even if this be so, yet the power to sell these mortgages was given by the Probate Court. Upon this point the record recites that "the trust estate which came into the possession of Berry as trustee under the will of Sayles consisted wholly of personal property invested in certain stocks and promissory notes secured by mortgages of real estate," and that "Berry as trustee sold and converted into money certain shares of stocks, having obtained permission of the Probate Court to sell the same for reinvestment; and he afterwards invested a part of the proceeds thereof in the" mortgages in question. No copy of the decree is before us, but it is stated in the brief of the defendants, and we assume the statement to be correct, that no restriction was expressly imposed by the Probate Court. Under these circumstances it is argued by the defendants that, inasmuch as no particular form or description of investment was prescribed by the Probate Court, this matter was left entirely to the discretion of the trustee, that the decree was not exhausted by making one investment of the proceeds but that the trustee could thereafterwards change the investment of the whole or part of those proceeds without further application to the court. We do not think that this is the legal effect of the decree. The trustee held under the will. By its terms he had no power to sell. He desired to change an investment, — that is, to sell something he had and to buy something he had not. This the Probate Court permitted him to do, and so far and for that purpose authorized him to act. It is true that in considering what to buy as a substitute for what he had, he could exercise proper discretion, but when he once had made

the change he had exhausted the power granted by the decree, and held the new security upon the terms by which prior to the decree he had held the old, — namely under the terms of the will. This interpretation of the decree gives ample scope for its action for the purpose for which it was needed, and leaves the trust estate where the language of the will places it.

Under that decree Berry sold a part of the stocks held by him as trustee and invested some of the proceeds in these two mortgages, and they became a part of the trust estate under the Sayles will. Having made the change he had to that extent exhausted the decree, and he held the mortgages under the terms of the will.

It follows that he had not the power to sell, and that, even if the defendants bought in good faith, their title must be regarded as subject to the same trust as before the attempted transfer of the legal estate to them.

*Decree for the plaintiff.*